# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**ANTHONY WHITFIELD,** individually and on behalf of all others similarly situated,

*Plaintiff,*

*v.*

**PRIME AGENCY, LLC**

*Defendant.*

Case No.

2:26-cv-00327

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant's attempt to weaponize the recent federal government shutdown as an excuse for its clear obligation to scrub the numbers it is calling against the Federal Do Not Call Registry must be rejected because that argument runs contrary to the TCPA's statutory text, as well as pleadings, which must be taken as true, that the Plaintiff's telephone number had been on the Registry as of September 17, 2025. Thus, compliance with the TCPA was certainly possible.

Second, Defendant seems to read a different version of the complaint that the Plaintiff has not pled that injects its own versions of the facts and which runs contrary to well-established Third Circuit law regarding standing. Third, the Plaintiff does not even plead the use of an ATDS, only bringing a cause of action for the TCPA's do not call prohibitions. The complaint should not be dismissed. Relatedly, Defendant's improper "counterclaim" for declaratory relief, which it pleads in the context of a motion to dismiss, should be struck as procedurally improper.

Finally, this Court should issue an order to show cause because Defendant has misrepresented numerous authorities, including *citing three cases that **do not exist**.*

## FACTS

The Complaint alleges a straightforward National Do Not Call Registry case. Plaintiff Anthony Whitfield alleges that Prime Agency, LLC contacted him even though his telephone number was on the National Do Not Call Registry and the calls were made without his prior express written consent. More specifically, Plaintiff alleges that his telephone number, (267) XXX-XXX, is a non-commercial, residential cellular telephone number. (Compl. ¶ 15.) The number is assigned to a residential cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses. (Compl. ¶ 16.) Plaintiff uses his cellular telephone number for personal use only, as one would use a landline telephone number in a home. (Compl. ¶ 17.) Plaintiff's telephone number has been listed on the National Do Not Call Registry since September 17, 2025. (Compl. ¶ 24.) Plaintiff has never been a customer of Defendant, never did business with Defendant, nor asked or inquired to be a customer of Defendant. (Compl. ¶ 25.)

Despite his Do Not Call Registry status, the Complaint pleads that Plaintiff received at least *two* calls from Defendant in November 2025. (Compl. ¶ 26.) On November 7, Defendant called Plaintiff from caller ID (267) 287-9845. (Compl. ¶ 27.) Plaintiff rejected that call. (Compl. ¶ 28.) On November 13, Defendant called Plaintiff from the same caller ID. (Compl. ¶ 29.) Plaintiff answered the call and spoke with an agent named Lamarre Touissaint. (Compl. ¶ 30.) During the call, Mr. Touissant solicited Defendant's insurance plans and offerings and provided a call back number of (863) 862-9643. (Compl. ¶ 31.) After the call ended, Plaintiff called (863) 862-9643 and spoke with an individual who confirmed that Defendant's business was Prime Agency, LLC located in Boca Raton, Florida. (Compl. ¶ 32.) Plaintiff also confirmed that Mr.

Touissant was employed by Defendant. (Compl. ¶ 33.) The purpose of the calls was to solicit Defendant's business. (Compl. ¶ 34.)

The Complaint further alleges that Plaintiff never consented to receive calls or text messages from Defendant (Compl. ¶ 35), that the calls were unwanted, (Compl. ¶ 36), and that they were nonconsensual. (Compl. ¶ 37.) Plaintiff explains how his privacy has been violated, (Compl. ¶ 38), including because his phone line was tied up, and his privacy was improperly invaded. Furthermore, the complaint explains that the calls unnecessarily used battery life, storage space, bandwidth, and wear and tear. (Compl. ¶ 40.) Moreover, the complaint alleges the calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class. (Compl. ¶ 41.)

## LEGAL STANDARD

The standards for 12(b)(1) challenges for a lack of subject matter jurisdiction are well-settled in this circuit. Notably, there exist two types of 12(b)(1) challenges, each with their corresponding standards: facial and factual challenges. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In evaluating either 12(b)(1) challenge, the Court applies the Rule 12(b)(6) standard. *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024). To the extent that the motion does not properly address jurisdiction but instead sounds in the factual merits, such motion also ought to be denied and the case proceed. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the

3

Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

## LAW AND ARGUMENT

1. **Mr. Whitfield's number first appeared on the Do Not Call Registry on September 17, 2025. Even under any safe harbor, Prime Agency was required to not call him no more than 31 days thereafter.**

Defendant repeatedly claims that the "Plaintiff alleges that a federal government shutdown delayed processing beyond 31 days." and that the "Plaintiff also alleges that Plaintiff's registration was delayed beyond the standard 31 -day period due to a federal government shutdown." The Complaint pleads no such allegations. Defendant's lead argument fails because it rewrites the Complaint. The Complaint does not allege that Mr. Whitfield merely *attempted* to register his number on September 17, 2025, and then waited for the government to process that request. It alleges that his number "has been listed on the National Do Not Call Registry since September 17, 2025," and that Defendant nevertheless placed telemarketing calls to him on

4

November 7 and November 13, 2025. Taking those allegations as true, as the Court must at the Rule 12(b)(6) stage, Defendant was required by operation of law to honor that registration. It may have had a safe harbor for calls no later than 31 days later, that is, by October 18, 2025, *see* 47 C.F.R. § 64.1200(c)(2), but affirmative defenses like this one cannot be adjudicated now.

And though this Court may take judicial notice of the fact that there was a government shutdown that lasted between October 1, 2025 and November 12, 2025, that does not excuse Do Not Call Registry compliance during this time, and in fact, only applies to a *safe harbor*, not an actual requirement to state a claim for violations of the TCPA's Do Not Call Registry provisions. But even the government shutdown does not help Defendant for multiple reasons, including because the Defendant has not even pled that it scrubs telephone numbers against the Do Not Call Registry as an initial matter, nor provides any evidence that the Plaintiff was not on the "version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made," as the relevant safe harbor requires.

The governing text leaves no room for Defendant's theory. The applicable Do Not Call regulation provides that "[n]o person or entity shall initiate any telephone solicitation" to a residential subscriber whose number *is on* the national do-not-call registry. 47 C.F.R. § 64.1200(c)(2). It says *nothing* of how long the number must be on the Registry. Defendant's citation to a so-called "31 day" rule applies in the context of a TCPA *safe harbor*, *not* the text of the regulation itself. That safe harbor exempts from liability a person making telephone solicitations to a number on the Do Not Call Registry if it can establish (1) that the violation was a result of error and (2) that, as part of a routine business practice, it meets five enumerated standards. 47 C.F.R. § 64.1200(c)(2)(i)(A-E). One of these standards requires callers to employ "a version of the national do-not-call registry obtained from the administrator of the registry no

more than 31 days prior to the date any call is made, and maintains records documenting this process." 47 C.F.R. § 64.1200(c)(2)(i)(D).

As an initial matter, the presence of a *safe harbor*, of which the Defendant will bear the burden of proof at trial, is fatal to dismissal of the present claims at the 12(b)(6) stage because the TCPA itself makes this an *affirmative defense*, not an element of Plaintiff's claim. The Third Circuit, in turn, has made clear that a plaintiff need not "anticipate or overcome affirmative defenses" in a complaint, and that dismissal on an affirmative defense is proper only where the defense is apparent on the face of the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014). Defendant is thus trying to invert the pleading rules. It asks the Court to presume an affirmative defense applies, at the pleadings stage, based on a barren record and then dismiss because Plaintiff did not negate that defense in advance. That is not grounds for dismissal under Rule 12(b)(6), since "[l]itigants need not try to plead around defenses." *Id.*

But even putting aside the fact that Defendant is improperly trying to dismiss this case at the pleadings stage based on the presence of a potential affirmative defense, nothing in the Complaint, let alone Defendant's motion or memorandum, here establishes any compliance with the TCPA's safe harbor, nor does it explain why compliance during the government shutdown was allegedly rendered impossible. Pleading the presence of a safe harbor requires much more than handwaving about a government shutdown. Defendant must instead plead how it has complied with each of the statutory safe harbor requirements, and it does not do so. It does not allege, much less prove, that it subscribed to the Registry through the administrator, purchased access to the data, employed a version of the Registry obtained within 31 days of either challenged call, maintained records of its scrubbing process, trained its personnel, or implemented any of the written procedures the safe harbor requires. 47 C.F.R. §

64.1200(c)(2)(i)(A-E). It cannot thus even begin to explain how the government shutdown purportedly made compliance with the safe harbor allegedly "impossible." A defendant that does not even assert those predicate facts cannot obtain dismissal at the pleadings stage based on a hypothetical safe harbor, shutdown or not. And as a simple matter of black letter Third Circuit law, even such an affirmative defense cannot appropriately be raised at this stage. Defendant cannot now escape liability by claiming a safe harbor it has not even alleged it complied with, particularly when the allegation that the Plaintiff's number was registered on the Registry since September 17, 2025, must be treated as true.

Plaintiff's evidence and pleading simply underscores why dismissal is improper. Plaintiff pleads that his number first appeared on the Do Not Call Registry on September 17, 2025. For Rule 12(b)(6) purposes, these allegations must be treated as true. The complete National Do Not Call Registry is made available *daily* by the Federal Trade Commission to telemarketing businesses. Plaintiff's number thus appeared on every version of the Registry from its first appearance on September 17, 2025 through October 1, 2025, the date the Registry ceased accepting new registrations, or issuing new versions of the Registry based on those registrations, during the federal government shutdown. Defendant made calls to Plaintiff on November 7, 2025 and November 13, 2025. These dates are more than *50 days* after Plaintiff's number first appeared on the Do Not Call Registry on September 17, 2025.

Even accounting for the government shutdown period, the Registry was closed for *new* registrations only from approximately October 1, 2025 through November 13, 2025. The last version of the Registry before the shutdown, dated October 1, 2025, as well as every prior day up to September 17, 2025, *included Plaintiff's number*. The October 1 Registry version remained the operative version until the government shutdown ended and the Registry resumed accepting

7

registrations on November 13, 2025, which is the very date of Defendant's second call. Thus, there is no reason why the government shutdown would have somehow not allowed the Defendant to comply with the text of the statute.

Notably, Plaintiff's number was not (re-)registered or removed during the shutdown, nor could it have been, as the Registry was *not accepting new registrations or removals* during the shutdown. Plaintiff's number remained continuously on the Registry from September 17, 2025 forward. The first version of the Registry available after the shutdown ended, dated November 13, 2025, included Plaintiff's number, as did the last version before the shutdown began, as well as *every version* dating back to September 17, 2025. This is not a case where a consumer somehow registered during the shutdown (which, as explained, was not possible), and seeks to impose retroactive liability based on a number that was never actually present on an available Registry at the time of the call. It is simply the case of a telemarketer seeking to weaponize a government shutdown into an excuse for not using the Do Not Call Registry, including by not using the latest version that would have been last available to it, the October 1, 2025 version, issued shortly before the shutdown, a version which *contained the Plaintiff's telephone number* and thus had the registration required by law. At minimum, these facts foreclose Defendant's suggestion that the shutdown somehow erased Whitfield's already existing registration or that it was somehow not "processed" by the time the government closed its doors on October 1.

The shutdown did not remove Plaintiff's number from the Registry. It did not prevent its processing. It simply prevented *new registrations and removals* from occurring. The number appeared on the Registry starting on September 17, 2025. Plaintiff's number, having been registered before the shutdown, remained on the Registry throughout the entire government closure. Defendant had access to the October 1, 2025 version of the Registry (as well as every

prior version dating back to September 17), which listed Plaintiff's number, and was required to comply with it. If Defendant wishes to litigate some other affirmative defense beyond the statutory safe harbor such as an alleged "impossibility" or "fundamental fairness," it should do so on a developed record and not in an attempt to dismiss a Complaint that straightforwardly pleads that Whitfield's number was on the Registry beginning September 17, 2025 and that Defendant called him while his number was validly on the Registry, exactly as the text requires.

The TCPA does not contain a "government shutdown" exception to the requirement that telemarketers refrain from calling numbers on the Do Not Call Registry. Congress did not intend for telemarketers to be relieved of their statutory obligations when the federal government is not operational. To hold otherwise would create a perverse incentive for telemarketers to avoid updating their lists during government shutdowns, effectively using governmental dysfunction as a shield against TCPA liability. Plaintiff's allegations establish that his number was on the Do Not Call Registry since September 17, 2025. He was clearly on "a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made" at the time the calls were made. The statutory safe harbor, even if properly invoked, does not apply. Defendant's motion to dismiss on this basis should be denied.

**2. Third Circuit precedent confirms Plaintiff has suffered a concrete injury for Article III purposes.**

As an initial matter, Defendant claims that the "Plaintiff alleges only one call and does not plead any real-world harm such as: charges incurred, loss of use, time wasted, disruption of sleep or work, or emotional distress." This is patently false. Not only does the Plaintiff plead *two* calls, (Compl. ¶ 26), he also pleads concrete harms precisely of the same ilk that Defendant disclaims: he explains that his privacy was violated (Compl. ¶ 38), that the calls unnecessarily

used battery life, storage space, bandwidth, and wear and tear, (Compl. ¶ 40), and that they were

frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the

class. (Compl. ¶ 41.)

Well-established Third Circuit law confirms that what the Plaintiff has pled is sufficient.

Mr. Whitfield qualifies for Article III standing because he received unwanted calls, which the

Third Circuit has already held is sufficient. *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d

Cir. 2017). In *Susinno*, the Third Circuit heard an appeal from a TCPA claim's dismissal. The

defendant placed an unanswered call to the plaintiff, the plaintiff made no do not call request,

and the plaintiff had not been charged. *Id.* at 348. Still, the Third Circuit reversed, holding:

> Traditionally, a plaintiff's privacy is invaded for the purpose of an intrusion upon
> seclusion claim by telephone calls only when such calls are repeated with such
> persistence and frequency as to amount to hounding. The Second Restatement suggests
> that because two or three calls would not be highly offensive to the ordinary reasonable
> person, they traditionally would provide no cause of action. Yet when Congress found
> that unsolicited telemarketing phone calls or text messages, by their nature, invade the
> privacy and disturb the solitude of their recipients, it sought to protect the same interests
> implicated in the traditional common law cause of action. Put differently, Congress was
> not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a
> harm that, while previously inadequate in law, was of the same character of previously
> existing legally cognizable injuries. *Spokeo* addressed, and approved, such a choice by
> Congress.
>
> For these reasons, we hold that Susinno has alleged a concrete, albeit intangible, harm
> under the Supreme Court's decision in *Spokeo* . . . . Courts benefit from straightforward
> rules under which they can readily assure themselves of their power to hear a case. Our
> opinion today repeats our understanding that the *Spokeo* Court meant to reiterate
> traditional notions of standing. And the traditional notion of standing requires only that
> claimant allege some specific, identifiable trifle of injury. . . . Consistent with this legal
> standard, we hold that the TCPA provides Susinno with a cause of action, and that her
> injury satisfies the concreteness requirement for constitutional standing. Accordingly, we
> will vacate the District Court's order dismissing her case. . . .
>
> *Id.* at 351-52 (cleaned up). Defendant pays insufficient heed to *Susinno* and its progeny.

And though Defendant observes that *Susinno* held that there was a concrete injury stemming

from the receipt of a *voicemail*, that does not mean that the receipt of a call that is answered is

any less harmful. To the contrary, it is even more so. "To trigger the Court's subject matter jurisdiction, the phone call must constitute a "concrete" injury. . . . It does. . . .  If anything, speaking with an unwanted caller (as alleged here) represents a more "concrete" injury than picking up an unwanted voice mail." *Doyle v. Matrix Warranty Sols., Inc.*, 679 F. Supp. 3d 42, 43 (D.N.J. 2023) (citing *Susinno*); *Deleo v. Nat'l Republican Senatorial Comm.*, No. 221CV03807BRMESK, 2021 WL 5083831, at *5 (D.N.J. Nov. 1, 2021) ("The mere fact Deleo alleges he received unsolicited and intrusive text messages is sufficient to establish a concrete harm that Congress identified and sought to redress with the TCPA."). As the Third Circuit and this Court's sisters have held, Plaintiff unquestionably has standing because he received unwanted telephone calls in violation of his statutory rights, which invaded his privacy, used up his telephone resources, and were frustrating, obnoxious, and annoying.

Plaintiff need not plead any more.

### 3. Plaintiff pleads no ATDS claim.

Perplexingly, Defendant claims that the calls did not violate the TCPA's Automatic Telephone Dialing System (ATDS) provisions. But the Plaintiff asserts no claims for violations of the TCPA's ATDS provisions, contained in 47 U.S.C. § 227(b). Rather, the Plaintiff asserts claims for the TCPA's *Do Not Call Registry* provisions contained in 47 U.S.C. § 227(c), and in 47 CFR § 64.1200(c)(2). (Compl. ¶ 60-64). Indeed, as the email attached herein as Exhibit A reflects, counsel for Plaintiff asked counsel for Defendant to withdraw this portion of Defendant's motion on the basis that he pleads no such claims, but Defendant refused. This likewise provides no basis for dismissal.

To be sure, Congress passed the TCPA in response "to a torrent of vociferous consumer complaints about intrusive robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 614 (2020). And so it is not surprising that the TCPA addresses calls from autodialing systems,

in particular, in § 227(b). But Congress was concerned with more than just robocalls. Indeed, it had determined that "[u]nrestricted telemarketing . . . can [also] be an intrusive invasion of privacy." *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 861 (N.D. Ill. 2024) (*quoting* 105 Stat. 2394, codified as Note to 47 U.S.C. § 227). It therefore enacted § 227(c), which directs the FCC to "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). To aid the FCC in this endeavor, "Congress authorized the FCC to issue regulations, among other things, creating what is today commonly known as the national do-not-call registry." *Hossfeld*, 726 F. Supp. 3d at 862; *see also* 47 U.S.C. §§ 227(c)(1)(E), (c)(2), and (c)(3). The FCC eventually issued those regulations in 2003, which are found in 47 C.F.R. § 64.1200(c)(2).

They provide that, among other things, "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his . . . number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). For "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the[se] regulations," the TCPA provides a private right to "bring . . . (A) an action based on a violation of the regulations . . . to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions." 47 U.S.C. § 227(c)(5). Plaintiff's Complaint here alleges violations related to the Do Not Call Registry, not use of an ATDS. The fact that the calls were not placed with an autodialing system, then, provides no basis for dismissal, as this is a completely separate cause of action and subsection under the TCPA.

**4. Defendant manufactures non-existent authority and miscites other authority.**

Most troubling of all the Defendant's misplaced arguments is the Defendant's reliance on legal propositions that don't exist. Defendant claims that the Third Circuit held in *Mauthe v.*

*Optum Inc.*, 925 F.3d 129, 131 (3d Cir. 2019) that there is "[n]o standing where plaintiff alleged wasted time and annoyance from a fax." Not only does that quote not appear in *Mauthe*, that case does not address Article III standing or standing *at all*. Rather, in *Mauthe*, the Third Circuit affirmed dismissal of a TCPA fax case because it held that an unsolicited fax asking for a healthcare provider to verify their information in a directory was not an "advertisement" prohibited by the TCPA because it did not attempt to encourage the purchase of any services. 925 F.3d 129, 135 (3d Cir. 2019). *Mauthe* did not address to what extent the Plaintiff must plead an Article III injury under the TCPA.

Most concerningly, counsel for Defendant appears to simply have *made up* authority (or possibly used a hallucinating AI[1] to generate at least three citations). Defendant cites the case of *Wilson v. Quest Diagnostics* for the proposition that it held and distinguished "between "Annoyance" and "nuisance" from a single call is determined to be insufficient to establish the requisite concrete injury needed for standing." However, that **case *does not exist***. The citation to "2022 WL 17152188" *does not exist*. As an initial matter, Westlaw citations are typically seven digits long; the instant citation is 8 digits long. And, as Exhibit B demonstrates, the Plaintiff has been unable to locate an Eastern District of Pennsylvania case with that caption, save for a 2014 ERISA action that was terminated that same year. The same is true of the citation to *Smith v. Vision Solar LLC*, where this Court allegedly "found that two calls was facially lacking and insufficient to establish concrete harm (or injury) needed to establish standing." Although the citation to 2023 WL 5607458 is a valid citation, that citation is to a different case entirely, *Thogus Prods. Co. v. Bleep, LLC*, No. 1:20-CV-01887, 2023 WL 5607458 (N.D. Ohio Aug. 30, 2023), attached herein as Exhibit C. The same is true of *Samuel v. U.S. Bank*, yet another non-

---

[1] If Defendant's counsel did use an AI to write its brief, it did so in contravention of this Court's standing order regarding Artificial Intelligence.

existent Westlaw citation, and yet another case which was not filed in the Eastern District of Pennsylvania, as demonstrated by <u>Exhibit D</u>. Defendant should be ordered to show cause why it should not be sanctioned for manufacturing citation authorities to this Court. *See Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1263 (N.D. Ala. 2025) (sanctioning attorney for reckless use of generative AI and observing that "[t]he insertion of bogus citations is not a mere typographical error, nor the subject of reasonable debate."). To "parrot citations generated by AI without verifying even one of them" reflects "complete and utter disregard for his professional duty of candor. This is recklessness in the extreme, and it is tantamount to bad faith." *Id.* at 1262.

Were that not enough, Defendant's blatant misrepresentation of authorities continues on the following pages in Defendant's brief on the Article III standing issue. In *Gadelhak v. AT&T Servs., Inc.*, the Seventh Circuit held that the TCPA reflected Congress's judgment that unsolicited telephone calls bore an analogous injury to traditional invasion of privacy tort. 950 F.3d 458, 462 (7th Cir. 2020). In so doing, the Seventh Circuit explicitly stated that "Congress identified a modern relative of a harm with long common law roots. And Gadelhak claims to have suffered the very harm that the Act is designed to prevent." *Id.* That's precisely the *opposite* of what Defendant represents *Gadelhak's* holding to be, that multiple unwanted text message calls are allegedly "insufficient" for the standing "required for intrusion-type harm."

In *United States v. Hayes*, the Eastern District of California, on its own initiative, ordered a show-cause hearing and awarded monetary sanctions against an attorney for citing *one* nonexistent case and misrepresenting the law in violation of Rule 11(b). No. 2:24-cr-0280-DJC, 2025 WL 235531, at *13–15 (E.D. Cal. Jan. 17, 2025). The *Hayes* court reasoned as follows in deciding to impose sanctions for citing a fictitious case:

> Many harms flow from the submission of fake opinions. The opposing party wastes time
> and money in exposing the deception. The Court's time is taken from other important

endeavors. The client may be deprived of arguments based on authentic judicial precedents. There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity. . . . A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law. An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system."

*Id.* at *7 (quoting *Mata*, *infra*, 678 F. Supp. 3d at 448-49, 461). Similarly, in *University of Washington v. Singh*, the Western District of Washington, on its own initiative, ordered the defendant's attorney to show cause "why they should not be sanctioned pursuant to Rule 11(c), 28 U.S.C. § 1927, and the inherent powers of the Court" for citing one non-existent case and misstating the law in a motion to stay. No. 2:24-cv-00899-MJP, 2024 WL 4315178, at *5 (W.D. Wash. Sept. 26, 2024).

This Court should follow in the footsteps of multiple other courts who have issued orders to show cause for why lawyers should not be sanctioned for what appears to be careless use of AI.[2] Including as included in the footnote below, those sanctions, upon a showing of improper use of artificial intelligence, have included striking filings, *Grant v. City of Long Beach*, 96 F.4th 1255, 1257 (9th Cir. 2024), dismissing claims and defenses with prejudice, *Thomas v. Pangburn*,

---

[2] *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1357 (S.D. Fla. 2025); *Johnson v. Dunn*, 792 F. Supp. 3d 1241 (N.D. Ala. 2025); *Dubinin v. Papazian*, No. 25-CV23877-RAR, 2025 WL 3248187, at *2 (S.D. Fla. Nov. 21, 2025); *United States v. McGee*, No. 1:24-CR-112-TFM, 2025 WL 2888065, at *9 (S.D. Ala. Oct. 10, 2025); *Med. Buyers Grp., LLC v. Pence*, No. 3:25-CV-00105-TES, 2026 WL 149949, at *4 (M.D. Ga. Jan. 20, 2026); *Jackson v. Auto-Owners Ins. Co.*, No. 7:24-CV-136–WLS, 2025 WL 1932274, at *5 (M.D. Ga. July 14, 2025); *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 351 (E.D.N.Y. 2025); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 499 (D. Wyo. 2025); *Hayes*, 763 F.Supp.3d at 1072-73; *Gauthier v. Goodyear Tire & Rubber Co.*, No. 23-CV-281, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024); *Mid Central Operating Engineers Health & Welfare Fund v. Hoosiervac LLC*, No. 24-CV-00326, 2025 WL 574234, at *2-3 (S.D. Ind. Feb. 21, 2025); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023); *In re Martin*, 670 B.R. 636 (Bankr. N.D. Ill. 2025); *Lexos Media IP, LLC v. Overstock.com, Inc.*, No. 22-2324-JAR, 2026 WL 265581, at *15 (D. Kan. Feb. 2, 2026); *In re Richburg*, 671 B.R. 918, 925 (Bankr. D.S.C. 2025); *Amarsingh v. Frontier Airlines, Inc.*, No. 24-1391, 2026 WL 352016, at *6 (10th Cir. Feb. 9, 2026); *Dehghani v. Castro*, 782 F. Supp. 3d 1051, 1062 (D.N.M. 2025); *Fletcher v. Experian Info. Sols., Inc.*, No. 25-20086, 2026 WL 456842, at *6 (5th Cir. Feb. 18, 2026).

No. CV423-046, 2023 WL 9425765, at *5–7 (S.D. Ga. Oct. 6, 2023), *report and recommendation adopted*, 2024 WL 329947, at *1 (S.D. Ga. Jan. 29, 2024), and imposing monetary sanctions, *Hayes*, 2025 WL 235531, at *13–15. The Court should follow these well-reasoned opinions and impose similar sanctions, and also award monetary sanctions, including reasonable attorney fees to Plaintiff, pursuant to Rule 11(c)(2).

### 5. This Court should strike or dismiss Defendant's declaratory judgment "counterclaim" as procedurally improper.

Finally, Defendant attempts to assert a self-styled "counterclaim for declaratory judgment of non-liability" pursuant to 28 U.S.C. § 2201. At this stage, the counterclaim, which itself is improper, must be struck or dismissed as procedurally improper. Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a court may strike from a pleading any matter that is "immaterial, impertinent, or scandalous," either upon the motion of a party or of the court's own volition. A motion to strike is appropriate when the matter to be stricken is unworthy of consideration, *In re: Maxim Integrated Prods., Inc.*, No. 12-244, 2013 WL 12141373, at *20 (W.D. Pa. Mar. 19, 2013), including if it is procedurally improper. *In re Venoco, LLC*, No. BR 17-10828 (KG), 2019 WL 2117638, at *2 n.4 (D. Del. May 15, 2019). A motion to strike is likewise appropriate where "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Arch Ins. Co. v. Kriger Constr., Inc.*, No. CV 22-4444, 2024 WL 1693989, at *2 (E.D. Pa. Mar. 26, 2024). "[I]f part of a pleading is insufficient or clearly invalid as a matter of law, it may be struck by the court." *Matter of Vanderhoef*, No. CV 22-4985, 2023 WL 12204502, at *2 (E.D. Pa. Dec. 14, 2023). Similarly, a Court may dismiss any counterclaim that is a procedural nullity. *Allied Med. Assocs. v. State Farm Mut. Auto. Ins. Co.*, No. CIV.A. 08-2434, 2009 WL 839063, at *2 (E.D. Pa. Mar. 26, 2009); *Bernstein v. IDT Corp.*, 582 F. Supp. 1079, 1089 (D. Del. 1984).

Federal Rule of Civil Procedure 12(b) permits defendants to assert only seven enumerated defenses by motion: (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party. FED. R. CIV. P. 12(b)(6). Rule 12 contains no provision authorizing the inclusion of counterclaims in motions to dismiss. Rule 12's scope is strictly limited to procedural challenges. Similarly, Federal Rule of Civil Procedure 13 governs counterclaims and establishes the exclusive framework for their assertion. Rule 13(a) states that "*a pleading* must state as a counterclaim" any compulsory counterclaim, while Rule 13(b) provides that "*a pleading* may state as a counterclaim" any permissive counterclaim. The rule's repeated use of the term "pleading" is significant because a motion is not a "pleading" under FED. R. CIV P. 7(a). Motions are not "pleadings," and the rules governing counterclaims make clear that they must be contained within "pleadings," not motions.

This Court agrees. In *Allied Med.*, 2009 WL 839063, at *1, this court struck and dismissed a counterclaim that was asserted as part of a motion to dismiss and not a pleading. As this Court succinctly explained, "Because a counterclaim is not itself a pleading, to state a counterclaim consistently with Rule 7(a) and Rule 13, a party must file the counterclaim *as part of* a recognized pleading, *i.e.,* an answer." *Id.* at *2. Accordingly, the Court dismissed the counterclaim as a legal nullity since it was not filed as part of a recognized pleading. *Id.* As Defendant's counterclaim is procedurally improper as it is not asserted within a pleading for the same reasons, it should be dismissed and/or struck.

17

## **CONCLUSION**

For the foregoing reasons, the Court should deny the motion to dismiss and issue an order to show cause for why Defendant's counsel should not be sanctioned for manufacturing and misrepresenting authority.


Plaintiff,
By Counsel

Dated: March 9, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com
*Attorney for Plaintiff and Proposed Class*


## **CERTIFICATE OF SERVICE**

I, Andrew Roman Perrong, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date. I also certify that I sent a courtesy copy of the foregoing to Chambers, as the exhibits attached to this motion exceed 50 pages.

DATED this March 9, 2026.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.