**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANTHONY WHITFIELD, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRIME AGENCY, LLC,<br><br>Defendant. | **CIVIL ACTION**<br><br>**NO. 2:26-cv-00327** |

**JOINT STATUS REPORT PURSUANT TO THE COURT'S STANDING ORDER DATED SEPTEMBER 1, 2026**

Plaintiff Anthony Whitfield ("Plaintiff") and Defendant Prime Agency, LLC ("Prime" or "Defendant"), by and through counsel, submit this Joint Status Report in response to the Court's September 1, 2026 Standing Order. The report identifies agreed background where possible and separately states disputed positions. Nothing in this report is intended as an admission, waiver, amendment of a pleading, or stipulation concerning admissibility.

## I. PARTIES AND LEAD COUNSEL

**Plaintiff.** Anthony Whitfield is an individual consumer and the proposed representative of a putative class. Plaintiff alleges that he received telephone solicitations in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. Section 227.

**Defendant.** Prime Agency, LLC is a limited-liability company engaged in marketing insurance products through licensed agents and obtaining prospective-customer leads from independent suppliers and brokers. Prime denies that it initiated, authorized, or ratified any unlawful call to Plaintiff.

**Lead counsel for Plaintiff.** Andrew R. Perrong, Perrong Law LLC, 1669 Edgewood Road, Suite 218, Yardley, PA 19067, and Anthony Paronich, Paronich Law PC, 350 Lincoln St #2400, Hingham, MA 02043

**Lead counsel for Defendant.** Mark T. Sophocles, Esquire, 21 Industrial Boulevard, Suite 201, Paoli, Pennsylvania 19301.

## II. FACTUAL BACKGROUND, CLAIMS, AND DEFENSES

### A. Concise Factual Background

The Complaint alleges that Plaintiff placed his residential telephone number on the National Do Not Call Registry in September 2025 and thereafter received more than one telephone solicitation in November 2025 from, or on behalf of, Prime concerning insurance products. Plaintiff alleges that he did not consent to the calls and suffered an invasion of privacy, annoyance, and loss of time. Plaintiff has stated in the briefing that he does not assert a claim based on use of an automatic telephone dialing system or an artificial or prerecorded voice. Plaintiff further alleges that he was never Defendant's customer, never did business with Defendant, and never asked or

consented to receive Defendant's telemarketing calls. *Id.* ¶¶ 25, 35–39. According to the Complaint, Defendant called Plaintiff from (267) 287-9845 on November 7 and November 13, 2025. *Id.* ¶¶ 26–30. Plaintiff rejected the first call. During the second call, an agent identified as Lamarre Touissaint allegedly solicited Defendant's insurance plans and provided a callback number. *Id.* ¶¶ 28–31. Plaintiff alleges that he called that number and confirmed both Defendant's identity and Mr. Touissaint's employment by Defendant. *Id.* ¶¶ 32–34. Plaintiff alleges that the calls invaded his privacy and related harms. *Id.* ¶¶ 38–41.

Prime disputes those allegations. According to Prime, the number identified in the Complaint came to Prime as a brokered insurance lead accompanied by an online consent record. Prime further maintains that any outbound call was placed independently by third party call center, not by Prime and not at Prime's direction or under its control. Plaintiff disputes the authenticity, scope, and legal effect of the asserted consent record and contends that initiation, agency, consent, and compliance are factual matters that cannot be resolved against him on the present pleadings.

The principal disputed issues are: (1) the number, timing, content, and origin of the calls; (2) whether any call was initiated by Prime or made on Prime's behalf; (3) whether Plaintiff gave prior express invitation or permission, and, if so, its scope and any revocation; (4) whether Prime can establish the statutory and regulatory compliance defenses; (5) whether Plaintiff pleaded a concrete Article III injury; (6) whether any violation was knowing or willful; and (7) whether a class may be certified.

**B. Plaintiff's Claims and Position**

Plaintiff asserts a putative class claim under 47 U.S.C. Section 227(c)(5), based principally on alleged violations of the National Do Not Call regulation, 47 C.F.R. Section 64.1200(c)(2). Section 227(c)(5) permits an action by a person who receives more than one call within a twelve-month period by or on behalf of the same entity in violation of regulations adopted under Section 227(c). Plaintiff seeks injunctive relief, actual loss or statutory damages of up to $500 per violation, and discretionary trebling for knowing or willful violations, together with class certification and other available relief.

Plaintiff seeks to certify the following putative class, subject to amendment as appropriate:

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call, text message, or combination thereof, from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

Plaintiff contends that the Complaint plausibly alleges two prohibited solicitations to a registered residential number and identifies Prime as the responsible seller. Plaintiff further contends that unwanted telemarketing calls invade the privacy interest protected by the TCPA and therefore supply a concrete injury. Plaintiff relies, among other authorities, on 47 U.S.C. Section 227(c)(5), 47 C.F.R. Section 64.1200(c)(2), *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351-52 (3d Cir. 2017), and the pleading standard stated in *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016). Plaintiff contends that Prime's asserted consent record, third-party-caller theory, safe-harbor facts, and compliance evidence are disputed matters outside the Complaint that should not support dismissal under Rule 12(b)(6).

**C. Defendant's Defenses and Position**

Prime denies liability and reserves all defenses. Prime avers the following:

- Prime did not make the outbound call at issue.
- Prime does not make outbound calls.
- The only call that was made was originated by an unaffiliated third-party call center, which then warm-transferred the consumer to a Prime agent on an inbound leg.
- The transfer was accompanied by a Jornaya lead certificate supplied by the call center, evidencing consent captured at the point of lead generation.
- The Plaintiff, who has denied the lead certificate and his number, previously publicly posted his telephone number on Facebook in March 2025, months before the call in question.
- Prime's vendor i.e. the third-party call center dialer records dialer records reflect only a single contact with the claimant's number, contradicting the allegations of multiple calls.
- The claimant states that seven different companies called him.
- The burden is on Plaintiff to identify which of those calls, if any, came from a number associated with Prime.
- The National Do Not Call Registry was inaccessible from October 1, 2025, through November 12, 2025, due to the federal government shutdown, and did not reopen until November 13, 2025. This impacts whether any registration by the Plaintiff had taken effect and was knowable by callers at that time.

- The call center that provided Prime the call sent Prime screenshot that the data was scrubbed and the number that was dialed was scrubbed against DNC list as well.
- Prime conducted documented due diligence when onboarding the third-party call center, expressly instructing that no federal DNC (FDNC) numbers were to be called or transferred to Prime.

Prime contends that the Complaint does not plead facts plausibly showing that Prime made or initiated the calls, that an identified caller acted on Prime's behalf under federal common-law agency principles, or that Plaintiff lacked consent. Prime relies on the asserted online submission and consent disclosure, its use of independent lead vendors, and its compliance procedures. Prime also invokes the error-and-routine-business-practice provisions of 47 C.F.R. Section 64.1200(c)(2)(i) and the affirmative defense in 47 U.S.C. Section 227(c)(5). The parties dispute the relevance and legal effect of the 2025 interruption in access to or updating of the National Do Not Call Registry that was discussed in the motion briefing.

Prime further contends that the Complaint alleges only a statutory violation and generalized annoyance, not a sufficiently concrete injury, and that it fails to plead knowing or willful conduct. Prime relies on Federal Rule of Civil Procedure 12(b)(6), Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009), Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016), and TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). Prime recognizes that Susinno is binding but contends that the nature and sufficiency of the injury alleged here, and the non-prerecorded live-call theory asserted here, must be evaluated on this Complaint's allegations.

## III. RELEVANT PROCEDURAL HISTORY

**January 19, 2026.** Plaintiff filed the putative class-action Complaint. (ECF No. 1.) Prime was served on January 26, 2026. (ECF No. 6.)

**February 16, 2026.** Prime filed a Motion to Dismiss and supporting memorandum under Rule 12(b)(6), also challenging Article III standing. (ECF No. 7.)

**March 9, 2026.** Plaintiff filed an opposition to the Motion to Dismiss. Plaintiff's opposition identified three purported authorities in Defendant's memorandum that Plaintiff

contends do not exist or do not correspond to the propositions for which they were cited. Plaintiff also identified alleged misstatements of actual decisions and challenged a purported declaratory-judgment counterclaim included in Defendant's motion papers. (ECF No. 13.)

**March 11, 2026.** Prime filed a Notice of Errata (ECF No. 14) and a Motion to Amend/Correct and Substitute a corrected memorandum (ECF No. 15). Prime acknowledged that an earlier draft containing inaccurate citations had been uploaded and requested that the corrected memorandum become the operative filing.

**March 25 and 27, 2026.** Plaintiff opposed the requested substitution and again raised citation-verification and sanctions concerns. (ECF No. 16.) Prime filed a reply and declaration accepting responsibility, apologizing for the errors, and representing that the corrected authorities had been verified. (ECF No. 17.)

**June 23 and 25, 2026.** Plaintiff filed a Notice of Supplemental Authority citing *McCormick v. Texakoma Financial, Inc.*, No. 4:25-cv-773, 2026 WL 1746259 (E.D. Tex. June 11, 2026). (ECF No. 18.) Prime responded that McCormick is a nonbinding sanctions decision, is factually distinguishable, and does not address the merits of the TCPA claim. (ECF No. 19.)

**September 1, 2026.** Following reassignment of the matter to the Honorable Antonio M. Pozos, the Court entered the Standing Order requiring this Joint Status Report.

No answer, Rule 16 scheduling order, or class-certification motion filed to date.

## IV. PENDING MOTIONS AND OTHER PENDING ISSUES

### A. Motion to Amend/Correct and Substitute (ECF No. 15)

Prime seeks leave to withdraw or supersede the memorandum filed with ECF No. 7 and to substitute the corrected memorandum attached to ECF No. 15. Prime contends that the requested relief falls within the Court's inherent authority to manage its docket and decide the merits on verified authorities; that the requested dismissal theories did not materially change; and that Plaintiff can receive an opportunity to respond if the Court deems supplementation necessary. Prime also argues that no procedurally compliant Rule 11 motion was served and filed under Rule 11(c)(2).

Plaintiff opposes substitution. Plaintiff contends that counsel printed, signed, scanned, and filed the original memorandum, and later reviewed it and represented that it was "fine as drafted" when Plaintiff's counsel attempted to confer about these issues and sought substitution only after Plaintiff identified the citation defects in a pleading. Plaintiff also contends that the proposed substitute is not a limited correction, but a material rewrite responding to Plaintiff's opposition.

The Motion presents related issues concerning the possible use of generative artificial intelligence. Plaintiff identified three purported authorities that allegedly were nonexistent: *Wilson v. Quest Diagnostics*, 2022 WL 17152188; *Smith v. Vision Solar LLC*, 2023 WL 5607458; and *Samuel v. U.S. Bank*, 2021 WL 489428. Plaintiff also identified alleged misstatements of *Mauthe v. Optum Inc.*, 925 F.3d 129 (3d Cir. 2019), and *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020), as well as language incorrectly attributed to *Foman v. Davis*, 371 U.S. 178 (1962), in the Motion to substitute.

When the papers were filed, the then-assigned judge's standing order required counsel using generative AI to assist with legal citations to disclose the program used and certify that every citation had been verified. Plaintiff contends that no disclosure or certification was provided despite errors characteristic of AI-generated hallucinations. Defendant has not admitted using generative AI and attributes the defects to the inadvertent filing of an earlier draft.

Plaintiff further contends that Rule 15(a) does not authorize amendment of a motion or legal memorandum, that the original filing contained material citation errors, and that substitution after Plaintiff responded would be improper or prejudicial. Plaintiff asks the Court to address counsel's filing obligations and the sanctions concerns raised in ECF Nos. 16 and 18. Relevant authorities include Rules 11 and 15, Local Civil Rule 7.1, the Court's inherent docket-management

authority, and *McCormick* as persuasive authority only. ECF No. 15 is not dispositive by itself, but its resolution will determine which memorandum, if any, governs the merits of ECF No. 7.

**B. Motion to Dismiss (ECF No. 7)**

Prime asks the Court to dismiss the Complaint in its entirety for failure to state a claim and for lack of a concrete Article III injury. Its principal arguments are that the Complaint does not plausibly allege a call initiated by or on behalf of Prime, does not account for consent and lawful explanations, and alleges insufficient injury and willfulness. Plaintiff responds that the Complaint alleges the statutory elements, that privacy invasion and unwanted-call harms are concrete under Third Circuit precedent, and that Prime's consent, agency, and compliance theories depend on disputed evidence outside the pleadings. The controlling framework includes Rule 12, *Twombly*, *Iqbal*, *Connelly*, *Susinno*, *Spokeo*, *TransUnion*, 47 USC § 227(c)(5), and 47 USC § 64.1200(c)(2).

Plaintiff responds that the alleged privacy, nuisance, and other harms establish standing under *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351–52 (3d Cir. 2017). Plaintiff also argues that the Court must accept as true the allegation that his number was registered more than thirty-one days before the calls. See *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). Plaintiff further explains that his sole claim arises under Section 227(c), not the TCPA's ATDS provision as asserted in the motion.

ECF No. 7 has the potential to dispose of the entire action. A ruling based on subject-matter jurisdiction, a dismissal with leave to amend, or a ruling limited to particular pleading deficiencies would not necessarily end the case, but could substantially narrow the claims, defenses, or required discovery.

**C. Sanctions Issue and Supplemental Authority**

Plaintiff's sanctions arguments appear in opposition and supplemental-authority filings rather than in a separately docketed Rule 11 motion. Prime contends that Rule 11(c)(2)'s separate-motion and safe-harbor requirements have not been satisfied and that counsel promptly corrected

the record and accepted responsibility. Plaintiff contends that the Court may address filing accuracy under Rule 11(c)(3) and its inherent authority. This issue is collateral to the TCPA merits and, standing alone, will not resolve the underlying claim. Counsel for Prime acknowledges filing erroneously drafted portion of Memo in Support of Rule 12B6 Motion.

The parties also disagree about Rule 11. Defendant argues that Rule 11 favors prompt correction and invokes Rule 11(c)(2)'s safe harbor. Plaintiff responds that counsel's Rule 11(b) duties attached when the memorandum was signed and filed and that the Court may independently order counsel to show cause under Rule 11(c)(3) without a safe harbor. See *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49, 461 (S.D.N.Y. 2023); *Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1262–63 (N.D. Ala. 2025).

## V. ANTICIPATED MOTIONS, DISCOVERY, AND OTHER PROCEEDINGS

If the action survives the pending motions, Prime will answer or otherwise respond as directed, and the Parties will complete a Rule 26(f) conference, initial disclosures, and a discovery plan. The likely fact discovery includes: call-detail and carrier records; Plaintiff's alleged National Do Not Call registration and claimed injury; the online lead and consent record; the identity and role of the lead generator, caller, and website or consent vendor; Prime's contracts, direction, control, ratification, and compliance procedures; and facts relevant to willfulness and class certification. Also, transcriptions of the calls / transferred calls to Prime and the call that Anthony Whitfiled made to Prime directly, third party dialer screen shot of the call, third-party subpoenas and depositions of Plaintiff, Prime representatives, the lead broker, and relevant service providers may be required.

The parties anticipate that later motions may include a Rule 23 class-certification motion and opposition. The Parties reserve the right to file one or more Rule 56 motions concerning consent, initiation, agency, compliance, injury, and willfulness, and, if experts are used, *Daubert* motions. Motions *in limine* may be required if the case proceeds to trial. Those motions cannot be

responsibly filed until the pleadings are closed and the relevant fact, class, and any expert discovery is complete.

**Parties' position on discovery while ECF Nos. 7 and 15 remain pending:**

Typically, the Plaintiff's position would be that discovery should proceed, however with a hearing on these motions weeks away, a short continued stay might be appropriate. The Parties therefore jointly request that discovery proceed under a prompt Rule 26 schedule following the hearing on the motion.

## VI. SETTLEMENT AND PROPOSED NEXT STEPS

The Parties have not reached a settlement but Defendant has authority to resolve this matter and requested the opportunity to negotiate in good faith with Plaintiff and/or a willingness to avail themselves to mediation. The parties do not believe that referral to a Magistrate Judge for a settlement conference would be beneficial at this time as the Plaintiff will need information about the putative class size prior to any resolution.

For case management purposes, the parties disagree as to what motion to resolve first. Plaintiff contends that the Court should first resolve the issue of Defendant's hallucinated citations and potential sanctions before determining the operative motion to dismiss, and then, depending on the operative motion, either adopt Plaintiff's opposition or direct a response to any amended operative motion as it may permit. As such, Plaintiff contends that the Court should resolve the following matters, in the following order: (1) Whether counsel should be required to disclose whether any generative AI system was used to research, draft, cite, or revise the original or proposed substituted papers; identify the system and the portions in which it was used; explain the prefiling verification undertaken; and provide a certification concerning all cited authorities; (2) Whether the record warrants an order to show cause or another remedy under Rule 11(c)(3), the Court's inherent authority, or the disclosure order applicable when the challenged filings were made; (3) Whether the original memorandum and its inaccurate authorities should remain available

on the docket as part of the procedural record if substitution is permitted, including whether ECF No. 15 should be resolved before or together with ECF No. 7; (4) which memorandum, if any, should govern adjudication of ECF No. 7; and (5) whether Plaintiff should receive leave to file a response to any substituted memorandum.

Defendant suggests that the Court first resolve ECF No. 15, then resolve ECF No. 7 on the operative briefing. If any claim remains, the parties request a Rule 16 conference and a scheduling order governing targeted fact discovery, class-certification proceedings, expert discovery if necessary, dispositive motions, and trial.

## VII. LOCAL CIVIL RULE 53.2 ARBITRATION

This case seeks injunctive relief. As such, it is ineligible for arbitration under Local Civil Rule 53.2.

## VIII. MEET-AND-CONFER CERTIFICATION

On September 9, 2026, counsel met and conferred by video conference for approximately 15 minutes. Participants included Lead Counsel Andrew Perrong for Plaintiff and Lead Counsel Mark Sophocles for Defendant. The parties discussed each subject required by ECF Nos. 21 and 23.

Dated: September 10, 2026
Respectfully submitted,

PERRONG LAW, LLC
By: /s/ Andrew R. Perrong
ANDREW R. PERRONG, ESQUIRE
PA Attorney I.D. No. 333687
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Telephone: 215-225-5529
a@perronglaw.com
Counsel for Plaintiff and the Proposed Class

MARK THOMAS SOPHOCLES, LLC

By: /s/ Mark T. Sophocles
MARK T. SOPHOCLES, ESQUIRE
PA Attorney I.D. No. 74998
21 Industrial Boulevard, Suite 201
Paoli, PA 19301
Telephone: 610-651-0105
mark@sophocleslaw.com
Counsel for Defendant Prime Agency, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2026, the foregoing Joint Status Report was filed electronically and is available for viewing and downloading through the Court's ECF system, which will serve all counsel of record.

/s/ Andrew R. Perrong
ANDREW R. PERRONG, ESQUIRE