**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANTHONY WHITFIELD,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**PRIME AGENCY, LLC**<br><br>*Defendant.* | Case No.<br><br>2:26-cv-00327<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S SUPPLEMENTAL SUBMISSION IN RESPONSE TO THE COURT'S SEPTEMBER 18, 2026 ORDER TO SHOW CAUSE (ECF NO. 25)**

**Introduction**

Plaintiff Anthony Whitfield submits this short supplement under the Court's invitation in its September 18, 2026 Order to Show Cause. (ECF No. 25.) This submission addresses only what has happened since, including Mr. Sophocles's October 2, 2026 Response (ECF No. 28), one document that is not yet in the record raised by that Response, and the Answer that Defendant has filed.

As Plaintiff has said before, this is a genuinely challenging time for courts deciding how best to address the misuse of generative AI in filings. Plaintiff has not filed a dedicated sanctions motion, and that was a deliberate choice made with plenty of forethought. Plaintiff defers to the Court in determining what sanction, if any, is appropriate, and does not request any specific relief. Plaintiff also recognizes that Mr. Sophocles has now accepted responsibility in light of difficult family circumstances, to which Plaintiff is empathetic.

Nevertheless, Plaintiff wishes to observe three salient facts in this supplement. *First*, this was not a typical AI citation problem. *Second*, Plaintiff raised the problems with Mr. Sophocles

in writing in a genuine effort to address the issue without intervention, and the response from Mr. Sophocles was to do nothing until the Court acted. *Third*, Plaintiff also briefly wishes to raise one post-Order filing that bears on the Court's concern about recurrence.

**Argument**

**I. The Fabricated Authority Aimed at Plaintiff's Right to Be in Federal Court.**

Most of the AI citation problems courts have confronted involve a bad pincite, a garbled quotation, or a stray case cited for a peripheral point. That is not what happened here, and Plaintiff respectfully submits the difference matters. Every one of the problems the Court identified with respect to the original motion were confined to a single portion of the briefing, the argument that Plaintiff lacks Article III standing. That argument, if accepted, would have ended Plaintiff's case at the pleadings stage. It would have denied him a federal forum for his claim, and with it the claims of the putative class. And Mr. Sophocles did not present the fabricated authorities as merely persuasive. He told the Court they were "binding upon the litigants" and "salient and directly related Third Circuit Cases." (ECF No. 7-1 at 5-6.)

The centerpiece of that fabricated proposition was a quoted holding attributed to the Third Circuit, that there is no standing where a plaintiff alleged wasted time and annoyance. (ECF No. 7-1 at 6.) As the Court noted in its Order, *Mauthe v. Optum Inc.*, 925 F.3d 129 (3d Cir. 2019), contains no such quotation and does not address Article III standing at all. (ECF No. 25 at 2 n.1.) So, the brief offered the Court binding Third Circuit precedent that does not exist.

It then set that invented precedent directly against the precedent that does exist. In the very next sentence, the brief recast *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351-52 (3d Cir. 2017), as finding standing "only because" the call left a prerecorded voicemail. (ECF No. 7-1 at 6.). But, contrary to that characterization, *Susinno* is *the* binding Third Circuit authority on

this question, and it is the authority this Court applied in holding that Plaintiff's nuisance and invasion of privacy harms were concrete. (ECF No. 26 at 3.) Put plainly, a fabricated Third Circuit holding was used to distinguish and minimize a real one. On that same point, the brief then told the Court that the Seventh Circuit found unwanted texts insufficient for intrusion-type harm. (ECF No. 7-1 at 6.) The Seventh Circuit held *the opposite*, expressly joining the Second and Ninth Circuits (in line with the Third Circuit's holding) in holding that unwanted text messages can be a concrete injury. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020); *see* ECF No. 25 at 3. These are not marginal mischaracterizations but presentations of multiple circuit holdings as standing for the opposite of the positions they articulate.

The brief then attempted to buttress these backwards characterizations with three supposed Eastern District of Pennsylvania decisions, each holding that one or two calls cannot support standing. None of them exists as cited. And, together, they formed an entire supporting line of circuit and local authority, invented from thin air, on the exact proposition the motion needed. That is a different level of problem from the situations courts generally see. The effect of these citations was not to dress up an argument. It was to tell the Court that binding law required dismissal of Plaintiff's claim as a matter of law, when binding law says the opposite. A party's rights can be lost that way. Rule 11 exists so that neither the Court nor the opposing party has to independently verify that the law a lawyer certifies actually exists. *See* Fed. R. Civ. P. 11(b)(2); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023). The mischaracterizations here were only caught because counsel is a subject-matter practitioner familiar with the cases cited.

**II. Plaintiff Raised the Problems in Writing.**

Plaintiff's counsel knew the issues with the motion, and because binding authority was at stake, felt they had to raise them. They did, repeatedly, and at real cost in time and effort. ECF

No. 28 now withdraws everything the Court identified. But the record shows that withdrawal came seven and a half months after filing, and only after the Court issued its Order.

In his Response, Mr. Sophocles points to a February 13, 2026 email, on which Plaintiff's counsel were copied, as showing that he told Plaintiff's counsel around the time of filing that he had been out of the office because of his parents' health. (ECF No. 28 at 4 & ECF 28-3 Ex. 3.) That email was a letter to a judge in an unrelated case pending in the Southern District of Florida. (*Id.* Ex. 3.) Because Mr. Sophocles has put that day's correspondence before the Court, Plaintiff believes the Court should understand the rest of it. Mr. Sophocles's emails to Plaintiff's counsel that day about *this* case asked for a call about "early intervention" and said, "Either way I will file an Answer Monday." (ECF No. 16-2 at 1, 3.) That evening, he sent Plaintiff's counsel, Andrew Perrong, an email attached as Exhibit A. It is not yet in the record. In it, Mr. Sophocles faulted Mr. Perrong for not calling him back, contrasted him unfavorably with co-counsel Anthony Paronich, and closed: "Come on kid. Call me back and be a gentleman." (Ex. A.)

Plaintiff is not offering Exhibit A to question anything Mr. Sophocles has said about his family or to comment on issues of unprofessionalism. Plaintiff offers it because it is a fact the Court should know in evaluating Mr. Sophocles' explanation. The contemporaneous correspondence directed to Plaintiff's counsel does not mention any need for time or help in this matter. It asked for phone calls and expressed frustration that Plaintiff's counsel were communicating in writing, which continued through the filing of the instant motion.

On February 17, 2026, the day after filing, Plaintiff's counsel flagged in writing that the memorandum attacked an ATDS claim Plaintiff never brought and embedded a declaratory judgment counterclaim in a motion to dismiss. Mr. Sophocles first offered to strike the ATDS section by stipulation "or simply blow it out in your response." Hours later, after he "got back to

my office[1] and reviewed the Complaint again," he withdrew that offer: "it's fine as drafted." (ECF No. 16-2 at 3-5.)

Next, after Plaintiff's Opposition identified the nonexistent and misdescribed authorities, Defendant sought to substitute a rewritten memorandum, describing the problem as clerical. That motion itself misquoted *Foman*, as the Court observed. (ECF No. 25 at 3.) On March 25, 2026, Plaintiff took the position in the Opposition that Rule 11 required immediate withdrawal of the inaccurate authorities. (ECF No. 16 at 4 n.2.) But, in its reply on March 27, Defendant did not withdraw. Instead, its reply argued that Plaintiff's use of the word "fabricated" overstated the issue and that the "arguments and general citations were accurate." (ECF No. 17 at 1, 3.) But, as explained above, and as the Court and Mr. Sophocles have now recognized, they were not.

Finally, on both June 25 and September 10, Defendant told the Court that counsel had "promptly corrected the record" and invoked Rule 11's safe harbor. (ECF No. 19 at 1; ECF No. 24 at 6, 8-9.) But only on October 2, after the Court's Order to Show Cause, did Mr. Sophocles formally withdraw the challenged citations, and also withdraw his earlier characterizations of the errors as "merely clerical or technical" or overstated by Plaintiff. (ECF No. 28 at 1-2.)

Plaintiff does not raise this procedural history to pile on, but rather to highlight the facts in one place. Mr. Sophocles did not respond to the February emails by re-reading his brief and fixing it. He did not respond to the March briefing by withdrawing what he could not support. To put it in the softest terms, the posture throughout was: what's the big deal? Section I, *supra*, shows why this is a big deal. When a client's right to be heard in federal court is challenged with made up authority is presented as binding, an opportunity to correct such a material

[1] Whether this statement is accurate is beside the point. Plaintiff simply observes that Mr. Sophocles did not bring up any personal circumstances or concerns on February 17.

mischaracterization it is exactly what Rule 11 contemplates. Mr. Sophocles had that opportunity from Plaintiff well before he had it from the Court. *See Mata*, 678 F. Supp. 3d at 461 (citing *Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017) for the proposition that a court may sanction a party's refusal to withdraw a contention after it is shown to be inaccurate).

**III. The Answer, Filed After the Order, Suggests The Problem May Be Recurring.**

The Court identified the possibility that these errors are "recurring despite Defense counsel's assurances" as a particular concern. (ECF No. 25 at 5.) Plaintiff wishes to raise one more filing the Court should look at with that concern in mind.

Six days after the Order to Show Cause, Defendant filed its Answer. (ECF No. 27.) Its Second Defense invokes the safe harbor of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2)(i). It alleges that:

> Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c), including [written do-not-call compliance procedures; training of personnel; maintenance of an internal list of numbers not to be called; a process for scrubbing calls against the National Do Not Call Registry; and] contractual requirements that lead vendors represent compliance with applicable telemarketing law and document consumer consent for each brokered lead, on which Defendant relied with respect to the lead at issue.

(ECF No. 27 at 11-12) (brackets in original).

The bracketed list is not an alteration and does not appear in a quotation. It appears to be template text, in a form commonly generated by an AI that wishes to provide options to its user, that was simply copied and pasted and never filled in or confirmed. And it tracks, nearly item for item, the statutory elements Defendant must prove to obtain the safe harbor. *See* 47 C.F.R. § 64.1200(c)(2)(i)(A)-(D). Bracketed, unverified placeholder text of that kind is consistent with exactly the kind of unverified generative AI drafting at issue here. Mr. Sophocles's Response explains the tools used for ECF Nos. 7-1 and 15-1, but says nothing about the Answer, which

was filed after the Order, and after the remedial measures he says he has used since Spring 2026. (ECF No. 28 at 2-3.)

Reading the Answer, Plaintiff cannot tell whether Defendant actually has written procedures, training, an internal list, and a scrubbing process, or whether the regulation's elements were simply recited back as boilerplate. Defendant has described its vendor onboarding and instructions to its call center (ECF No. 24 at 5), which corresponds to the unbracketed portion of the defense. The bracketed portion has no such support anywhere in the record. A defendant cannot plead a defense first and look for the facts later. Affirmative defenses that do so waste discovery resources in ferreting out the baselessness of defenses that should not have been asserted at all. *DeSandies v. Encore Grp. (USA), LLC*, No. 2:24-CV-01044-JDW, 2024 WL 1704982, at *2 (E.D. Pa. Apr. 19, 2024); *see also* Fed. R. Civ. P. 11(b)(2)-(3). A safe harbor defense whose operative facts were never filled in does not meet that standard.

Rule 11 applies to an answer just as it does to a brief. By signing it, counsel certifies that the "defenses" are warranted by law and that the factual contentions have evidentiary support. Fed. R. Civ. P. 11(b)(2)-(3). Counsel may not plead defenses that might apply in the abstract, since an affirmative defense requires a good-faith basis to believe the evidence supports it. *Greenspan v. Platinum Healthcare Grp., LLC*, 2021 WL 978899 at *1 (E.D. Pa. Mar. 16, 2021) (striking affirmative defenses as a Rule 11 sanction where they were asserted without a factual basis). As Judge Wolson put it, "the answer is never to file an answer—or any other pleading—without a factual basis." *Id.* at *3. Plaintiff is not asking the Court to strike anything today, and will pursue the basis for this defense through discovery or an appropriate motion. Plaintiff raises it here because it bears on the question the Court asked: is this conduct still ongoing?

**Conclusion**

Plaintiff requests no specific relief but respectfully requests that the Court weigh the three points outlined herein in determining what further action to take. Plaintiff's counsel plans to attend the October 15, 2026 hearing and is prepared to answer any questions the Court may have.

Dated: October 8, 2026

Respectfully submitted,

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, Pennsylvania 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

Attorney for Plaintiff and the Proposed Class

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: October 8, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.